IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW C. DURHAM, | § | |
| | § | |
| Plaintiff Below, | § | No. 343, 2019 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below – Court of Chancery |
| | § | of the State of Delaware |
| GRAPETREE, LLC, | § | |
| | § | |
| Defendant Below, | § | C.A. No. 2018-0174-SG |
| Appellee. | § | |

Submitted: November 24, 2020
Decided: January 26, 2021

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it

appears to the Court that:

(1)    This appeal arises from a books and records action brought by

Appellant, Andrew Durham, against Appellee, Grapetree, LLC ("Grapetree"), under

Section 18-305 of the Delaware Limited Liability Company Act.[1]  Durham appeals

the Court of Chancery's opinion that granted in part and denied in part Durham's

request to inspect various books and records maintained by Grapetree, as well as the

---

[1] 6 *Del. C.* § 18-305.

Court of Chancery's opinion and order granting Grapetree's motion for attorneys' fees.

(2) Andrew Durham is one of five siblings.[2] Durham and his siblings inherited a rental property in St. Lucia known as "Les Chaudieres," which is held by Grapetree. The St. Lucia property is Grapetree's sole asset. Durham's four siblings are manager-members of Grapetree; Durham is a member but not a manager. Durham came to believe that his siblings were mismanaging Grapetree and causing the St. Lucia property's value to suffer. To assess potential derivative litigation and evaluate the condition of his stake in Grapetree, Durham sought to inspect certain books and records under 6 *Del. C.* § 18-305.

(3) Grapetree failed to respond to multiple books and records inspection demands. On March 12, 2018, Durham filed a *pro se* Complaint for Motion to Compel Books and Records from Grapetree (the "Complaint"). Durham attached two books and records inspection demand letters to Exhibit A of the Complaint and three demand letters to Supporting Sub-Exhibits to Exhibit B of the Complaint.

(4) Grapetree did not initially respond to the Complaint, and on April 30, 2018, Durham filed a motion for default judgment against Grapetree. On May 1,

---

[2] This Court adopts the facts as established by the Court of Chancery in the proceedings below. *Durham v. Grapetree, LLC*, 2019 WL 413589 (Del. Ch. Jan. 31, 2019); *Durham v. Grapetree, LLC*, 2019 WL 2337475 (Del. Ch. June 4, 2019); *Durham v. Grapetree, LLC*, 2020 WL 5960941 (Del. Ch. Oct. 8, 2020).

2

2018, counsel entered his appearance on behalf of Grapetree, and the court scheduled a telephonic hearing for July. On June 14, 2018, Durham filed a letter seeking to supplement the books and records demands in his Complaint with additional books and records requests. Durham also filed various other motions and letters throughout June and July 2018 that are not relevant to this appeal.

(5) On July 23, 2018, the Court of Chancery held its first teleconference with the parties and addressed the motion for default judgment. On July 30, 2018, the court held a follow-up teleconference regarding the case status. Finally, on August 22, 2018, the court held a third telephonic hearing, during which the court set a briefing schedule and the parties agreed to resolve this matter based on the papers.

(6) After briefing from the parties, the Court of Chancery issued a letter opinion on January 31, 2019 (the "First Merits Opinion").[3] The First Merits Opinion held that Durham stated a proper purpose in seeking documents to determine the value of his interest in Grapetree, considered Durham's demands dated November 23, 2017, and December 4, 2017, granted six of Durham's requests for inspection, and denied the remainder of Durham's requests. The First Merits Opinion also rejected Durham's multiple motions to supplement his books and records requests with demands sent after Durham filed the Complaint.

---

[3] Opening Br. Ex. A (the "First Merits Op.").

3

(7) Following the First Merits Opinion, Grapetree filed a Motion for Partial Attorney's Fees and Costs, arguing that Grapetree was entitled to its attorney's fees incurred defending the action under fee-shifting provisions in the Grapetree, LLC Operating Agreement. On March 12, 2019, Durham filed an answering brief opposing Grapetree's motion. On June 4, 2019, the Court of Chancery issued a letter opinion (the "Fee Opinion"), in which the court held that Grapetree was entitled to a portion of its attorney's fees and costs.[4] Then, on July 8, 2019, the Court issued an order (the "Fee Order") granting Grapetree $23,289.09 in fees and costs.[5] On August 5, 2019, Durham filed a timely notice of appeal contesting the Court of Chancery's rulings in the First Merits Opinion, Fee Opinion, and Fee Order.

(9) On appeal, Durham argued that the Court of Chancery: (i) improperly limited its review to two of the four demands attached to his Complaint; (ii) improperly denied Durham's requests for certain books and records; (iii) misinterpreted the word "substantially" as used in the fee-shifting provision of the Grapetree, LLC Operating Agreement; (iv) failed to consider the applicability of the doctrine of unclean hands when awarding attorneys' fees; and (v) erroneously rejected Durham's motion for default judgment.

---

[4] Opening Br. Ex. B (the "Fee Op.").
[5] Opening Br. Ex. C (the "Fee Order").

(10)   Having identified what appeared to be an inconsistency between the trial record and the court's First Merits Opinion,  on August 11, 2020, this Court issued an order remanding this matter to the Court of Chancery to consider any timely but overlooked demands attached to Durham's Complaint, as well as to revisit the court's Fee Opinion and Fee Order to the extent appropriate.

(11)   On October 8, 2020, after receiving supplemental submissions and hearing argument, the Court of Chancery issued a letter opinion (the "Remand Opinion") addressing this Court's remand order.[6]  The court noted that Grapetree presented no defense to the Plaintiff's overlooked demands attached to the Complaint.  Nonetheless, the court independently found a proper purpose and ordered Grapetree to produce all the books and records demanded in the overlooked demands attached to Durham's Complaint, to the extent such documents existed as books and records of Grapetree.  It light of this ruling, the court also withdrew its Fee Opinion, vacated its Fee Order, and held that each side shall bear its own fees.

(12)   On October 22, 2020, this Court sent a letter to the parties requesting supplemental memoranda regarding the Court of Chancery's Remand Opinion and the remaining issues on appeal.  Neither party raised any challenges to the Remand Opinion.  Neither party changed its position regarding the remaining issues on appeal.  Thus, we address the remaining unresolved challenges on appeal—whether

---

[6] *Durham v. Grapetree, LLC*, 2020 WL 5960941 (Del. Ch. Oct. 8, 2020) (the "Remand Op.").

5

the court improperly denied requests for informal books and records and whether the court improperly denied a motion for default judgment. "[W]e review for abuse of discretion the Court of Chancery's determination of both the scope of relief and any limitations or conditions on that relief. This standard of review is 'highly deferential.'"[7]

(13) First, citing to this Court's opinion in *KT4 P'rs, LLC v. Palantir Techs., Inc.*, Durham argues that the Court of Chancery improperly denied his requests for certain books and records in its First Merits Opinion. Durham argues that the court improperly denied numerous line items on the basis that the requests did not seek the production of conventional or formal corporate records. Durham argues that the only existing corporate communications are in emails, text messages, and phone record. Thus, he argues that he was entitled to those communications under *KT4*.[8]

(14) In *KT4 P'rs*, this Court held that demands to inspect books and records "must be interpreted in light of companies' actual and evolving recordkeeping and

---

[7] *KT4 P'rs, LLC v. Palantir Techs., Inc.*, 203 A.3d 738, 748 (Del. 2019) (citing *Wal–Mart Stores, Inc. v. Ind. Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1271–72 (Del. 2014)) (addressing Section 220). For purposes of legal analysis, a books and records demand served on an LLC under Section 18-305 functions in the same manner as a books and records demand served on a corporation under Section 220 of the Delaware General Corporation Law. *See, e.g. Sanders v. Ohmite Hldgs., LLC*, 17 A.3d 1186, 1193 (Del. Ch. 2011) ("Delaware courts have interpreted Section 18–305 by looking to 'cases interpreting similar Delaware statutes concerning corporations and partnerships.'" (citing *Somerville S Trust v. USV P'rs, LLC*, 2002 WL 1832830, at *5 n. 4 (Del.Ch. Aug. 2, 2002))).
[8] Opening Br. 27-31.

6

communication practices."[9]  If a company "conducts formal corporate business without documenting its actions in minutes and board resolutions or other formal means, but maintains it records of the key communications only in emails, the [company] has no one to blame but itself for making the production of those emails necessary."[10]

(15)   Durham points to three denials that he claims impeded his access to necessary informal business documents: (i) the court's denial of Durham's request for "[a]ll correspondence among a number of named individuals;"[11] (ii) the court's denial of Durham's request for "a 'list' of all decisions made by the 'Managing Members' in the last three years, whether in writing, by text, and/or by email;"[12] and (iii) the court's denial of Durham's request for "[a]ll correspondence between the LLC and FOWP, Kidney Foundation, Westtown school, Brian Fahey, etc."[13]  But the Court of Chancery denied those requests on the basis that they were over broad, unrelated to Durham's proper purpose of valuing his Grapetree interest, or included improper requests for Grapetree to create documents.[14]

---

[9] *KT4 P'rs, LLC*, 203 A.3d at 753.
[10] *Id.*
[11] First Merits Op. at 8.
[12] *Id.*
[13] *Id.* at 10.
[14] *Id.* at 8, 10.

(16) Further, the court granted other requests that provide access to the relevant informal communications Durham seeks. For example, Durham requested access to records concerning approval of corporate expenses:

> Records concerning approval by the Managing Members of the following expenses: Jeff and Jim Poole's construction trip; all Best Buy purchases in which the aggregate of purchases is over $1,000 per month; new credit card line of $15,000; Dee's initial cash advance of $1,500 from the credit line; Dee's ongoing cash advances raising the credit line balance to -$3,960.54; [D]ee's landscaping purchases; each one of Dee's and Jeff's discounts to 25 separate friends and charities; roof repair receipts, estimates, quotes and warranty; purchases of 'artwork' from Aztec copies.[15]

The Court of Chancery granted this request, stating that "[t]hese documents are pertinent to understanding the operation and value of the LLC, which I have found to be Andrew's proper purpose."[16] The court also granted Durham's request for any existing "[r]ecords concerning the approval by the Managing Members" for the listed expenses and transactions.[17] While the court also stated that Grapetree must produce documents "[t]o the extent there exist documents evincing Managers' Meetings" and "presentations . . . and minutes of the meetings," that language does not expressly limit the Grapetree's production to those formal categories.[18] If

---

[15] *Id.* at 8-9.
[16] *Id.* at 9.
[17] *Id.*
[18] *Id.*

Grapetree conducted its business without documenting its actions in minutes, board resolutions, or other formal means, but maintained its records in informal communications like emails and text messages, any such informal records must be produced under the court's ruling.

(17) Therefore, the Court of Chancery did not improperly deny Durham access to informal communications. Where the court denied requests, it did so because those requests were improperly broad, called for the company to create documents that did not exist, or sought documents unrelated to Durham's proper purpose. The court did not deny any request simply because the request sought informal records, and it did not limit any records that it granted solely to formal records. Thus, this Court holds that the Court of Chancery acted within its discretion when it denied Durham's additional, broad requests for "all communications" between parties and "lists" of transactions.

(18) Second, Durham argues that the Court of Chancery erroneously rejected his motion for default judgment. Durham argues that the court should have granted default judgment in his favor because he properly served the Complaint on Grapetree and Grapetree failed to respond within twenty days.[19] The record, however, reveals that Durham abandoned his default judgment motion during a June

---

[19] Opening Br. 26.

23, 2018 teleconference with the court.[20]  After that teleconference, Durham did not raise the issue of default judgment in any of his numerous subsequent filings or at any of the teleconferences with the court.  Instead, Durham litigated his books and records action to final judgment.  Thus, it appears that Durham abandoned his motion for default judgment.

(19)  Regarding the Remand Opinion, after careful consideration of the parties' briefs and the record on appeal, we find it evident that the judgment of the Court of Chancery should be affirmed on the basis of and for the reasons stated in the October 8, 2020 Letter Opinion.

NOW, THEREFORE, IT IS ORDERED that the Court of Chancery's judgment is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
Justice

---

[20] A7, Tr. of Telephonic Status Conference dated 7/23/18, at 4.